JUDGE CASTEL    07 CV 6833

369-07PJG/PLS
FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax

Peter J. Gutowski (PG 2200)
Pamela L. Schultz (PS 0335)



JUL 30 2007
U.S.D.C. S.D.N.Y.
CASHIERS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
PROVENCE INVESTMENT INC.,

     Plaintiff,

 -against-

MEWAH OIL SDN BHD a/k/a
MEWAH-OIL SDN BHD,
     Defendant.
-----------------------------------------------------------x

07 Civ.

**VERIFIED COMPLAINT**

  Plaintiff, PROVENCE INVESTMENT INC. OF LIBERIA (hereinafter "PROVENCE") for its Verified Complaint against Defendant MEWAH OIL SDN BHD a/k/a MEWAH-OIL SDN BHD (hereinafter "MEWAH"), alleges upon information and belief as follows:

  1. This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure in that it involves a claim for the breach of a maritime contract of charter party. This case also falls under this Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. §1333 and the Court's federal question jurisdiction pursuant to 28 U.S.C. §1331. Federal jurisdiction also exists because the action arises under the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards at 9 U.S.C. §201 et seq. and/or the Federal Arbitration Act, 9 U.S.C. §1 et seq.

NYDOCS1/287418.1

2. At all times material hereto, Plaintiff PROVENCE was and still is a foreign business entity duly organized and existing under the laws of a foreign country with an address at 80 Broad Street, Monrovia, Liberia.

3. At all times relevant hereto, Defendant MEWAH was and still is a foreign business entity duly organized and existing under the laws of a foreign country with an address at Lot 40, Section 4, FASA2A, Pulau Indah Industrial Park 42920, Pelabuhan Klang Selangor, Darul, Ehsan, Mulaysia.

4. On or about August 4, 2006, Plaintiff PROVENCE, in the capacity as Owner of the M/V OLYMPICS I, entered into a maritime contract of charter party with Defendant MEWAH, as Charterer, for the carriage of a cargo of palm oils from Indonesia to Pakistan. A copy of the charter party is annexed as Exhibit A.

5. Plaintiff PROVENCE duly tendered the vessel into service under the charter, and a cargo of palm oil was carried to Pakistan, where it was discharged in October 2006.

6. Subsequent to the discharge, nine cargo receivers asserted claims in Pakistan against PROVENCE for alleged shortages of less than .5% of the bill of lading quantities. At present, the total of these claims against PROVENCE is $44,181.50.

7. Under the terms of the charter party between PROVENCE and MEWAH, if any cargo shortage claims of less than .5% than the bill of lading quantities were asserted against PROVENCE, MEWAH was to settle the claims with the cargo receivers and/or the cargo receiver's insurers directly.

8. Contrary to the terms of the charter party, and in breach thereof, MEWAH has refused or otherwise failed to assume the responsibility to settle the cargo receivers' claims directly.

9. The charter party provides for the application of English law and all disputes between the parties are to be resolved by arbitration in London, where arbitration has already been commenced and PROVENCE specifically reserves its right to arbitrate the substantive matters at issue.

10. Under English law, including but not limited to Section 63 of the English Arbitration Act of 1996, costs including attorney fees, arbitrators' fees, disbursements and interest are recoverable as part of Plaintiff's claim.

11. As a direct consequence of MEWAH's failure to assume its responsibilities under the charter party, PROVENCE was obliged to retain legal counsel and incur legal fees and costs in order to defend the nine separate claims in the Pakistan proceedings, commence arbitration proceedings in London against MEWAH and bring these proceedings in order to obtain security for the claims.

12. This action is brought to obtain jurisdiction over MEWAH and to obtain security in favor of Plaintiff PROVENCE in respect to its claims against MEWAH and in aid of London arbitration proceedings.

13. This action is further brought to obtain security for any additional sums to cover Plaintiff's anticipated attorney fees and costs in the Pakistan proceedings and the arbitration and interest, all of which are recoverable as part of Plaintiff's claim under English law.

14. Plaintiff estimates, as nearly as can be computed, that the legal expenses and costs of defending the claims of the receivers, prosecuting the London arbitration and/or otherwise securing its claim will be $54,750 and interest on its damages is estimated to be $22,851.65 (calculated at the rate of 6% for a period of 7 years, the estimated time for completion of the proceedings in Pakistan as advised by counsel for Plaintiff in Pakistan).

**Request for Rule B Relief**

15.    Upon information and belief, and after investigation, Defendant cannot be "found" within this District for the purpose of Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims, but Plaintiff is informed that Defendant has, or will shortly have, assets within this District comprising, *inter alia*, cash, funds, escrow funds, credits, debts, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or for the benefit of Defendant (collectively hereinafter, "ASSETS"), including but not limited to ASSETS in either of its names, to wit: MEWAH OIL SDN BHD a/k/a MEWAH-OIL SDN BHD or for its benefit, at, moving through, or being transferred and/or wired to or from banking institutions or such other garnishees who may be served with a copy of the Process of Attachment issued herein.

16.    The total amount to be attached pursuant to the calculations set forth above is $121,783.15.

WHEREFORE, Plaintiff PROVENCE INVESTMENT INC. prays:

a.    That process in due form of law according to the practice of this Court may issue against Defendant citing it to appear and answer the foregoing;

b.    That if Defendant cannot be found within this District pursuant to Supplemental Rule B that all tangible or intangible property of Defendant up to and including $121,783.15 be restrained and attached, including, but not limited to any cash, funds, escrow funds, credits, debts, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or being transferred from or for the benefit of Defendant (collectively hereinafter, "ASSETS"), including but not limited to such

ASSETS as may be held, received, or transferred in either of its names or as may be held, received or transferred for its benefit, at, through, or within the possession, custody or control of such banking institutions and/or any such other garnishees who may be served with a copy of the Process of Maritime Attachment and Garnishment issued herein;

c.  That this Court retain jurisdiction over the matter for any further or supplemental proceedings as may be necessary, including but not limited to the recognition and enforcement of any judgment entered against the Defendant in the London proceedings; and

d.  For such other, further and different relief as this Court may deem just and proper in the premises.

Dated: New York, New York
July 30, 2007

FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff

By: *[signature: Pamela Schultz]*
Peter J. Gutowski (PG 2200)
Pamela L. Schultz (PS 0335)
80 Pine Street
New York, NY 10005
(212) 425-1900

## ATTORNEY VERIFICATION

State of New York )
                       ) ss.:
County of New York )

PAMELA L. SCHULTZ, being duly sworn, deposes and says as follows:

1.    I am an associate with the law firm of Freehill Hogan & Mahar, LLP, attorneys for Plaintiff in this action, I have read the foregoing Verified Complaint and know the contents thereof, and the same is true to the best of my knowledge, information and belief.

2.    The sources of my information and the grounds for my belief are communications, information and documentation provided by our client and/or by solicitors representing our client.

3.    The reason this verification is made by an attorney and not by the Plaintiff is because the Plaintiff is a foreign entity, none of whose officers are presently within this Judicial District.

_____
Pamela L. Schultz

Sworn to before me this
30 day of July 2007

_____
Notary Public

Lisa M. Morales
Notary Public, State of New York
No. 01MO6162004
Qualified in the Bronx
Commission Expires Feb. 26, 2011

NYDOCS1/287418.1            6

```
Message Printed on 9/4/20061:49:25 PM by PK RefNum:1030438 From/To: Nederkoorn S
```

TO      COSTAS MOUTZOURIDIS

FM      NEDERKOORN SHIPBROKING PTE LTD., SINGAPORE

REF     JQ30/04.08.2006

RE      MT OLYMPICS I OOS / MEWAH
        MIN 28,750 UP TO 2 PCT MORE IN CHOPT
        1-4 GRADES WVNS CRUDE AND/OR RBD PALM OIL PRODUCTS
        EX DUMAI (LUBUK GAUNG) A/O PORT KLANG (W) A/O PASIR GUDANG
        TO KARACHI AND PORT QASIM
        (MAX 20,000 MT IF PORT QASIM, BALANCE 8,750 MT FOR KARACHI)
        05-20 SEPTEMBER 2006 LAYCAN
        CP DATED 04TH AUGUST 2006
========================================================================

++ STRICTLY P N C AND NON-REPORTABLE ++


ROEMAIL AND YAHOO EXCHANGES LAST TODAY - WE ARE PLEASED TO
RECAP CLEAN FIXTURE AS FOLLOWS :


- CHARTERPARTY    DATED 04TH AUGUST 2006

- CHARTERER       MEWAHOLEO INDUSTRIES SDN BHD AND/OR
                  MEWAH-OILS SDN BHD AND/OR NOMINEE(S).
                  (IF NOMINEE(S), MEWAHOLEO INDUSTRIES SDN BHD TO
                   REMAIN FULLY RESPONSIBLE FOR THE PERFORMANCE OF
                   THIS CHARTERPARTY)

- OWNER           PROVENCE INVESTMENTS INC., LIBERIA

- VESSEL          MT OLYMPICS I OOS
  BUILT           1980
  FLAG            PANAMA
  CLASS           RUSSIAN MARITIME
  SDWT            29,995.00 MT
  SDRAFT          11.12 M
  GRT/NRT         17,996 / 10,583
  LOA             178.86 M
  BEAM            25.30 M
  COILS           MILD STEEL HEATING COILS
  COATINGS        MILD STEEL TANKS - NO COATINGS
  TANK CAPACITY   32,717.30 CBM AT 98 PCT (INCLUDING SLOPS)

  LAST CARGO      VEGOIL PRODUCTS
  2ND LAST        MOLASSES
  3RD LAST        GASOIL

--------------- End of Message ---------------


EXHIBIT
A

| | |
|---|---|
| - CARGO | MIN 28,750 MT UP TO 2 PCT MORE IN CHOPT, AS FAR AS VESSEL CAN LOAD BASIS 11.50 METRES DRAFT ON ARRIVAL AT KARACHI. |

AND BASIS 9.00 METRES DRAFT ON ARRIVAL AT PORT QASIM, VESSEL CAN LOAD MAX ABOUT 20,000 MT OF CARGOES.

1-4 GRADES WVNS CRUDE AND/OR RBD PALM OIL PRODUCTS IN BULK. NO ACIDS / NO CHEMICALS.

MAX FFA 5.0 PCT FOR CRUDE PALM OIL PRODUCTS AND MAX FFA 2.5 PCT FOR REFINED PALM OIL PRODUCTS

IF STEARIN, IT HAS TO BE LOADED OVER THE TOP AND TO BE DISCHARGED BY PORTABLE PUMPS AT CHARTERER'S EXPENSE.

INTENTION : RBD PALM OIL
            RBD PALM OLEIN
            CRUDE PALM OIL

(A) NON-COMMINGABLE WITH OTHER CHARTERERS' CARGOES EVEN THOUGH OF SIMILAR GRADES AND DESTINATION.

- LOADING    1SP 1SB DUMAI (LUBUK GAUNG) AND/OR
             1SP 1SB PORT KLANG (WEST)    AND/OR
             1SP 1SB PASIR GUDANG

(A) EXACT LOAD PORT(S) DECLARABLE FIVE (5) DAYS PRIOR TO ARRIVAL AT THE 1ST LOAD PORT.

- DISCHARGING    1SP 1SB KARACHI (11.50 M MAX DRAFT) AND 1SP 1SB PORT QASIM, WHERE OWNER IS AWARE THAT MAXIMUM DRAFT AT PORT QASIM IS 9.00 METRES.

(A) MAX QUANTITY FOR PORT QASIM DISCHARGE IS 20,000 MT

(B) ROTATION : KARACHI FIRST THEN PORT QASIM

- LAYCAN    05-20 SEPTEMBER 2006 LAYCAN

(A) ITINERARY (AGW UCE WOG):
    ETA IRAN            15-16 AUGUST      DISCH
    ETS IRAN            20-22 AUGUST      DISCH
    ETA DUMAI (LG)      04-07 SEPTEMBER   LOAD
    ETA PORT KLANG(W)   04-07 SEPTEMBER   LOAD
    ETA PASIR GUDANG    04-07 SEPTEMBER   LOAD
    ETA KARACHI         11-16 SEPTEMBER   DISCH

End of Message

```
              (B) IF IT BECOMES APPARENT THAT THE VESSEL WILL
                  MISS HER CANCELLING DATE, OWNER TO INFORM
                  CHARTERER IMMEDIATELY AND TO PROPOSE NEW
                  LAYCAN. CHARTERER, WITHIN ONE WORKING DAY,
                  WILL EITHER ACCEPT THE NEW LAYCAN OR WILL
                  CANCEL THE VESSEL WITHOUT ANY CLAIMS FROM
                  EITHER PARTIES.

- LAYTIME         150 MTPH LOAD - INDONESIA
                  150 MTPH LOAD - MALAYSIA
                  100 MTPH DISCHARGE

                  (A) ALL LAYTIME TO BE SHINC REVERSIBLE.

- FREIGHT         USD 39.00 PMT BASIS 2 LOAD / 2 DISCHARGE
                  USD 38.00 PMT BASIS 1 LOAD / 2 DISCHARGE

- PAYMENT         FULL FREIGHT IS PAYABLE IN FULL WITHOUT DEDUCTION
                  BY IRREVOCABLE T/T AGAINST OWNER'S FAX INVOICE
                  IN US DOLLARS WITHIN 3 BANKING DAYS AFTER COMPLETION
                  OF LOADING DIRECT TO OWNER'S DESIGNATED BANK
                  ACCOUNT.

- TTL COMM        2.5 PCT ON F/D/O TO NSPL TO BE DEDUCTED AT SOURCE

- DEMURRAGE       USD 19,000 PDPR
```

- Extra War risk insurance and crew bonus clause :
If the ports nominated by the charterer to load or discharge cargo
are declared as war risk zones for insurance purposes and/or the
ship must transit waters declared as war risk zones for the same
purposes and the owner incurs extra war risk premium and/or crew
bonus and/or crew insurance expenses then said premiums and/or
expenses to be paid by charterer prorata on the basis of the
proration of charterer's cargo to all other cargo being loaded or
discharged at charterers nominated ports. Payments will be due
seven (7) days after presentation of OWNER'S INSURANCE BROKERS
INVOICE for extra war risk premium and Owner's invoice for
crew bonus and/or crew insurance expense. If the suez or panama
canals are declared as war risk zones for insurance purposes and
the owners incur extra war risk premiums and/or crew bonus expenses
then said premiums and/or expenses to be paid by the charterer's
prorata on the proration of charterer's cargo to all other cargo
onboard at time of canal transit.

- C/P FORM   VEGOILVOY CP WITH FOLLOWING ADDITIONS/ALTERATIONS :

1. FREIGHT PAYABLE IN FULL, EXCLUDING BANK CHARGES, TO OWNER'S
NOMINATED BANK ACCOUNT WITHIN 3 BANKING DAYS AFTER COMPLETION OF
LOADING. OWNER TO RELEASE ''FREIGHT AS PER C/P'' BS/L WITHIN 48 HOURS
AFTER COMPLETION OF LOADING PROVIDED SHIPPERS/SUPPLIERS SUBMIT
SUCH BS/L TIMELY TO OWNER'S AGENTS AT LOAD PORT(S). OWNER TO RELEASE

CHARTERER'S BANK THAT FREIGHT HAS BEEN IRREVOCABLY REMITTED TO
OWNERS' ACCOUNT AS INVOICED, AND THE FIRST SET OF BS/L (IF ANY)
HAS BEEN SURRENDERED IN FULL TO OWNER OR THEIR AGENTS.

OWNER'S BANKING DETAILS :
PAYABLE TO              : HSBC BANK PLC
                          PIRAEUS BRANCH
                          93, AKTI MIAOULI GR-185 38
                          PIRAEUS
                          GREECE
SWIFT ADDRESS           : MIDLGRAA
USD ACCOUNT NO.         : 1-007061-071
IN FAVOUR OF            : PROVENCE INVESTMENTS INC
REFERENCE               : MT OLYMPICS I OOS/MEWAH/CP 04.08.2006

2. DEMURRAGE CLAUSE :-
A) THE CHARTERER SHALL PROMPTLY NOTIFY THE OWNER OF ANY OBJECTIONS
TO ANY DEMURRAGE CLAIM UNDER THIS CHARTERPARTY. UNLESS THE OWNER
HAS RECEIVED SUCH NOTIFICATION WITHIN 30 DAYS AFTER THE CHARTERER'S
RECEIPT OF THE CLAIM, THE CHARTERER SHALL BE DEEMED TO HAVE WAIVED
OBJECTION TO THE CLAIM WHICH SHALL BE DEEMED ACCEPTED BY THE
CHARTERER AS PRESENTED.
B) THE CHARTERER SHALL PAY ANY UNDISPUTED DEMURRAGE WITHOUT DELAY,
BUT IN ANY EVENT NOT LATER THAN 30 DAYS AFTER THE CHARTERER'S
RECEIPT OF THE DEMURRAGE CLAIM.
C) PAYMENT OF DEMURRAGE SHALL BE MADE BY THE CHARTERER WITHOUT ANY
SET OFF OR DEDUCTION FOR ANY COUNTERCLAIM, INCLUDING BUT NOT LIMITED
TO ANY CARGO CLAIM.

3. TAXES/DUES ON CARGOES AND/OR FREIGHT TO BE FOR CHRTR'S ACCOUNT.
TAXES/DUES ON VESSEL/WHARFAGE/DOCKAGE/QUAY DUES TO BE FOR OWNER'S
ACCOUNT.

4. OWNER'S AGENTS AT BOTH ENDS, BUT OWNER TO APPOINT M/S INTRA-LINK
AGENCIES AT LOAD PORT(S), AND M/S ALPINE MARINE SERVICES AT
DISCHARGE PORT(S), PROVIDED COMPETITIVE.

5. OWNER NOT TO BE RESPONSIBLE FOR ANY LOSS / SHORTAGE OF CARGO
INCURRED OUTSIDE OF SHIP'S MANIFOLD INCLUDING THE 0.5 PCT TOLERANCE
LOSS ALLOWABLE IN THE VEGOIL TRADE.

IF ANY SHORTAGE CLAIMS AGAINST OWNERS ARE WITHIN THE 0.5 PCT
TOLERANCE LOSS, CHARTERER IS TO SETTLE THE CLAIMS WITH RECEIVERS
OR RECEIVERS' INSURANCE COMPANIES DIRECTLY.

6. VSL'S LAST 3 CARGOES CLEAN, UNLEADED. ''FOSFA INTERNATIONAL LIST
OF BANNED IMMEDIATE PREVIOUS CARGOES'' WITH EFFECT FROM 1ST OCTOBER
2004 TO APPLY.

VESSEL'S LAST THREE PREVIOUS CARGOES SHALL NOT BE
ETHYLENE DICHLORIDE AND/OR STYRENE MONOMER.

End of Message